## INVALIDITY OF THE MOTOR VEHICLE LICENSE LAW.

Court of Appeals for Franklin County.

·CHARLES H. GRAVES v. CHARLES C. JANES AND THE OHIÓ
AUTOMOBILE ASSOCIATION.*

Decided, February 7, 1914.

*Constitutional Law—Invalid Sections of the Motor Vehicle License Act
—Repealing Sections Void and Former Sections Restored—103 O.
L., 763.*

1. Section 6294, General Code, as amended (103 O. L., 763), providing
   for graded license fees for the use of motor vehicles upon public
   highways, and Section 3609 (6309), General Code, manifesting the
   legislative purpose, are unconstitutional· and void.
2. These sections being unconstitutional, the repealing clause is to that
   extent void, and the former sections are therefore revived.
3. Section 6294, General Code, and Section 6309, General Code, as they
   existed prior to the act of 1910 (103 O. L., 763), are constitutional
   and therefore operative.    ·

*Timothy S. Hogan*, Attorney-General, and *James I. Boulger*,
for plaintiff in error.

*C. D. Saviers, H. L. Gordon* and *R. L. Lee*, contra.

ALLREAD, J.; FERNEDING, J., and KUNKLE, J., concur.

This action involves the constitutionality of the Automobile
License Act of 1903 (103 O. L., 763), providing for a system of
identification and registry of motor vehicles and the annual pay-
ment of certain graded license fees.

The act under consideration is an amendment to an act upon
the same subject passed in 1908, amended in 1909 and embodied
in the General Code as Sections 6290 to 6310 inclusive.

The main features of the act of 1913 are to bring in motor-
bicycles and motorcyles, increase the license upon gasoline and
steam cars according to horse power, increase the flat rate upon
electrics and upon manufacturers, dealers and chauffeurs; and

*Affirming, with modifications, *Janes v. Ohio State Automobile Co. et
al,* 15 N.P.(N.S.), 193.

to leave substantially two-thirds of the total receipts in the general revenue fund of the state.

The constitutionality of the act under consideration is challenged chiefly upon the following grounds:

(1) Want of legislative power upon the general subject-matter.

(2) Unlawful discrimination, and

(3) Illegality and unreasonableness in the amount and the purpose of the fee exacted.

We think the power of the General Assembly to prescribe a license fee for vehicles using the highways of the state or those whose use thereof creates a special burden, is clearly supported by reason and authority.

From the foundation of our state the public highways have been largely maintained by general taxation. The general principle underlying this system of road improvement was the general public welfare and the approximate equality of the benefits as represented by the taxable property of individuals. The condition in the earlier history of the state especially exemplifies the appropriateness of that form of taxation. In the development of the state a more expensive system of roads was demanded in the populous centers and the necessity or at least advisability arose of imposing a portion of the expense of maintaining the highways of the larger municipalities upon the owners of vehicles whose use of such highways was specially burdensome. The constitutionality of laws enacted for the purpose indicated was challenged and the power of the Legislature to enact such laws was sustained in the leading case of *Marmet* v. *State*, 45 O. S., 63.

In recent years new problems of road building and repair have arisen by the prevalent use of motor vehicles and this problem has been increased by the skill of the inventor and the manufacturer in building practical cars of high power and speed. The state is, therefore, confronted with the necessity or expediency of building better roads for the accommodation of this new method of travel, of providing for the increased expenses of repairs upon highways by reason of this new use, to preserve

the highways in repair for all kinds of travel, and of establishing proper police regulation.

In the case of *Cincinnati* v. *Bryson*, 15 Ohio, 625, where the right of the state to authorize cities to charge a license fee upon the use of drays, hacks, omnibuses and other heavy vehicles was involved, Birchard, J., says:

"It is manifest to every one, that, in a large city, vehicles of this description cause great destruction to the public ways— far greater than the usual ordinary travel of citizens otherwise employed. There is, therefore, no injustice in exacting a reasonable portion of the expenses which such special occupations cause to the community; and those who enjoy the special privilege, can refuse to bear a reasonable portion of the burden but with an ill grace."

In the case of *Marmet* v. *State, supra,* the general legislative authority in respect to vehicle license tax is defined as follows:

"The General Assembly has power * * * to regulate occupations by license and to compel by imposition of a fine, payment of a reasonable fee where special benefit is conferred by the public upon those who follow an occupation or where the occupation imposes special burdens on the public or where it is injurious to or dangerous to the public."

While there is an intimation of doubt expressed by Price, J., in the case of *Pegg* v. *City of Columbus*, 80 O. S., page 383, yet we think the right to enact a license law including a reasonable charge as a privilege tax is clearly established in this state.

It is also claimed that the act is discriminatory and in violation of the uniformity clause of the Constitution. This contention is founded upon the general exemption of horse drawn vehicles and certain motor vehicles.

The uniformity clause of the Constitution does not prevent reasonable classification of the subjects of legislation. Motor vehicles are a just subject of classification in respect to the use of public highways as distinguished from horse drawn vehicles. No better statement of this proposition can be made than that found in the opinion of Spear, J., in the case of *Allen* v. *Smith,* 84 O. S., 283, as follows:

"Doesn't everybody know that the automobile is a new ma-
chine of travel; its use a new use of the highways; that it is
dangerous to other travelers; that its power, its capacity for
speed, the temptation it affords the reckless driver to operate it
at a dangerous rate and in a careless manner, all distinguish the
automobile from all other vehicles. Surely it can not be neces-
sary to further elaborate this fact so patent to every observing
and reading person. The automobile is, therefore, a class by
itself, the users of such machines a class by themselves, and legis-
lation in recognition of this condition is based upon solid easily
recognized distinctions."

This classification deals more especially with the necessity of
police regulation. The burden of highway maintenance as be-
tween motor vehicles and horse drawn vehicles is as clearly
pronounced.

Reference is made in the briefs to the burden of the heavier
of the horse drawn vehicles as compared with automobiles. Even
this comparison does not eliminate a reasonable foundation for
distinction. Horse drawn vehicles move slowly and are neces-
sarily confined to a limited mileage, so that the total of the wear
upon the highways and the amount of necessary police regula-
tion of horse drawn vehicles is materially less than that of motor
vehicles. It is, however, contended that there is unjust and
unfair discrimination in the special exemptions of certain motor
vehicles. The reason for the exemption in favor of fire engines,
fire trucks and police patrol wagons which are governmental
agencies maintained by general taxation is manifest. Road
rollers which are used largely by public authority for road pur-
poses, may be exempted for the same reason. Public ambulances
includes those owned by public authorities as well as those pri-
vately owned, but may legitimately be excepted because of the
public welfare involved in their use. It would be strange, in-
deed, if not an anomaly in the administration of government if
a tax be imposed upon vehicles so used.

The exemption of traction engines is particularly complained
of. The court will take judicial notice that these engines are
generally used for power purposes in threshing grain and the
like and that their use of the highways is merely incidental.
The speed is low and the total mileage of travel small. A tour-

ing car will travel almost as many miles of highway in a single day as the traction engine will travel in the course of an entire season. Besides the very useful purpose of the traction engine and its relation to the production of food supplies for the citizens of the state may furnish grounds for legislative classification. This feature is fully discussed by Spear, J., in the case of *Marmet* v. *State, supra.*

Street cars and vehicles operated upon fixed tracks are already specially taxed and may therefore be exempted from this act.

There is complaint of the uncertainty and inaccuracy of the basis of horse power rating established in the act in respect to steam and gasoline cars. While this is a subject for judicial notice, yet the court has been favored with evidence bearing upon this feature. From the evidence we are advised that the basis of horse power rating adopted by the act is well recognized and has been employed by leading manufacturers, and while in the recent development of engine making there may be some inaccuracy, still we think this basis is sufficiently definite to justify legislative adoption. The standard adopted is a formula. There is no delegation of power. The formula existing at the time of the enactment continues until changed by the Legislature. There is also sufficient reason for the flat rate charges upon electrics. The electrics in general use are comparatively slow moving and of low horse power. While it may be true that electrics of high speed have been constructed, yet it is equally true that they are not in general use. Should they become so, it will be ample time for the Legislature to act.

This brings us to a consideration of the amount and legality of the license charge. This feature is the most difficult of solution. The identification and registry of motor vehicles has a legitimate purpose, but it is clear that the charge provided for in the act under consideration goes far beyond this purpose. The act clearly contemplates other purposes and such purposes must be ascertained and their legality determined by constitutional limitations. It is apparent from the entire act that in addition to identification and registry, the privilege of the use of the roads by motor vehicles and of police regulation thereon is con-

templated.. The imposition of a reasonable charge for reimbursement for road maintenance and repair and for policing the road in view of the special uses contemplated by the act is warranted by the general grant of legislative power. This is not a property tax but a privilege tax. The reasonableness of a privilege tax is confided largely to the discretion of the General Assembly, but for the abuse of such legislative power, a final review is in the courts.

The opinion of the court in reviewing the power to levy excise taxes in the case of *Southern Gum Company* v. *Laylin*, 66 O. S., 578, is illustrative. But the case of *Pegg* v. *City of Columbus, supra*, where the whole scope of the reasonableness of the act then under consideration was reviewed is analogous and directly in point. The right of the use of the public ways of the state is in a measure inherent in every citizen, but clearly that right may be regulated to subserve the interests of the public welfare. When, therefore, the Legislature clearly exceeds the limit of reasonable taxation for the privilege conferred or the burden resulting or when the charge imposed is clearly founded upon an improper basis for an unwarranted purpose, it is the duty of the courts to declare the act invalid.

Section 3609 requires the revenue derived from. registration fees to be applied to the expenses of the registry department and the surplus paid into the state treasury. The act provides that one-third of the revenue paid into the state treasury

"Shall be used for the repair, maintenance, protection, policing and patrolling of the public roads and highways of this state under the direction, supervision and control of the state highway department."

No special provision having been made for the other two-thirds of this revenue, it remains in the general revenue fund. It is true that the general revenue fund is subject to special appropriation for any lawful purpose. But we can not escape the conclusion that the manifest purpose of the General Assembly in appropriating expressly for highway purposes, including both maintenance and policing but one-third of such revenue and leaving the other two-thirds in the general revenue fund of the

state clearly discloses an intention upon the part of the General Assembly to raise the larger portion of this fund for general revenue purposes. The act is therefore, to that extent, a general revenue measure.

What further special burden or benefit than that provided for in the special appropriation for road purposes is involved in the use of highways by motor vehicles upon which to found a legitimate right to tax them for general revenue? Increased litigation in the criminal and civil courts would probably support an allotment of some share to the general revenue fund. But that consideration would not of itself justify the large portion of this tax devoted to general revenue. Nor, can we conceive of any other reason justifying it.

The cases of *State, ex rel* v. *Ferris,* 53 O. S., 314, and *Ashley* v. *Ryan,* 53 O. S., 504, are cited to support the contention that the power to levy an excise tax involves by implication the right to appropriate the tax to the general revenue fund.

The vehicle tax involved in the act under consideration does not rest upon the same basis as the excise tax involved in the cases cited.

The authorities in this state do not attempt to classify vehicle tax as an excise tax, but it is rather considered to be a special privilege tax imposed as compensation for special burdens and inconveniences.

In all cases involving vehicle license taxes brought before the Supreme Court the revenues were appropriated to highway uses and this case brings up for the first time, so far as we are advised, before the courts of this state the question of the right to impose a vehicle tax wholly or partly for general revenue.

We are, therefore, forced to the conclusion that the act under consideration so far as it applies to the owners and users of motor vehicles is, in large part, a general revenue measure and to that extent is unconstitutional and, void. The unconstitutional or revenue features of the act not being separate, vitiates the entire provision of the act to owners and users.

In view of our finding as to the unconstitutionality of the act we do not feel justified in expressing an opinion as to whether the schedule of fees therein provided is so clearly excessive as to

warrant a court in declaring the same invalid, if the Legislature had expressly declared it necessary to raise such entire fund for the purpose of maintaining, repairing and policing the public highways and had appropriated the entire amount so raised less the cost of maintaining the department to such uses.

The main and controlling object of the amendment of 1913, being void, the repealing act to that extent is void and the corresponding sections of the former act are revived. All the main features of the present act except the general revenue feature are involved in the former act. Having that in view, we have considered the general features applicable to the former act and find no constitutional infirmity. The section of the former act defining motor vehicles includes among the exceptions motor bicyles and motorcycles in addition to those of the present act. That motorcycles and motor bicycles may be separately classified, we think is apparent.

Section 6302 of the act of 1913, in respect to license for chauffeurs is clearly constitutional.

Section 6301 of the act of 1913, imposes a flat rate upon manufacturers and dealers in motor vehicles. This rate is not apparently excessive and no particular argument has been made against it. It is also more in the nature of an occupation tax and we therefore sustain that section, notwithstanding the provision as to the application of the fund.

The injunction allowed in the court of common pleas should be modified and limited so as to conform to this opinion and as so modified will be affirmed.